IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DWAYNE SHANNON,                                    3:11-CV- 01409 RE

        Plaintiff,                              **OPINION AND ORDER**

v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

        Defendant.

**REDDEN**, Judge:

Plaintiff Dwayne Shannon ("Shannon") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this matter remanded for the calculation and payment of benefits.

1 - OPINION AND ORDER

## BACKGROUND

Born in 1963, Shannon has worked in landscape maintenance. In April 2008, Shannon filed an application for disability insurance benefits and SSI benefits, alleging disability since January 2, 2005, due to psychosis and depression. Tr. 131. His applications were denied initially and upon reconsideration. After a February 2010 hearing, an Administrative Law Judge ("ALJ") found him not disabled in an opinion issued in March 2010. Shannon's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ'S DECISION

The ALJ found Shannon had the medically determinable severe impairments of a psychotic disorder, not otherwise specified, an affective disorder, and alcohol and polysubstance abuse in remission. Tr. 30.

The ALJ determined that Shannon retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, limited to simple, repetitive tasks and only occasional interaction with others. Tr. 32.

The ALJ found that Shannon was able to perform his past work as a landscape laborer. Tr. 36.

The medical records accurately set out Shannon's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

/ / /

/ / /

## DISCUSSION

Shannon contends that the ALJ erred by: (1) finding him not fully credible; (2) improperly weighing the testimony of mental health practitioners; and (3) presenting an inaccurate hypothetical question to the Vocational Expert ("VE").

### I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282.

The ALJ found that Shannon's allegations as to the intensity, persistence and limiting effects of his symptoms not credible to the extent that they are inconsistent with the RFC. Tr. 33.

Shannon testified that he is homeless, and goes to the shelter sometimes. Tr. 8. He has never owned or rented a home. Shannon last worked four or five years ago, mowing lawns and landscaping for a landscape maintenance company. It was stressful because he got wet and the boss "was always yelling," "and I just couldn't deal with it after a while." Tr. 9.

The ALJ found that Shannon's allegations were not fully supported by Jane Starbird, Ph.D.:

> The claimant reported to Dr. Starbird in March 2008 that because of Wellbutrin and Seroquel, his mood was stable and he was not experiencing auditory or visual hallucinations [citation omitted]. Dr. Starbird reported that although the claimant was abstinent from amphetamines, cocaine, and opioids, he continued to drink beer [citation omitted]. On mental status examination the claimant was noted to be a poor historian with poorly organized thinking. However, Dr. Starbird reported there was no indication of psychotic processes or bizarre mentation. The claimant...was oriented.

*Id.*

Dr. Starbird also stated that Shannon's affect was not always consistent with the content of his speech, noting that he exhibited no distress about being homeless. Tr. 338. He responded to questions quickly, without reflection or consideration. Judgment and insight were deemed poor. Dr. Starbird noted two suicide attempts in the prior ten years, and diagnosed psychotic disorder, NOS, and depressive disorder, NOS. Tr. 339. Because of his history of legal problems, "risk taking behaviors, absence of remorse and other features," Dr. Starbird diagnosed antisocial personality disorder. *Id.* Because of his impulsiveness and poor judgment he was deemed not competent to handle funds independently. Nothing in Dr. Starbird's report constitutes a specific, cogent reason for the ALJ to find Shannon less than fully credible.

In finding Shannon not fully credible, the ALJ noted a November 2000 chart note stating that Shannon had responded well to medications, including Zyprexa, Wellbutrin, Trazodone, and Neurontin, citing exhibit 14F/3. This is a discharge summary prepared by Eric Gilbreath, M.D., in which Dr. Gilbreath notes:

> [Shannon] was in the Recovery Northwest treatment program after recent detoxification at St. John's Medical Center for alcohol....On admission, Dwayne spoke of a long-standing history of extreme mood variability with extreme anger episodes and violent aggressive episodes. He also experienced extreme anxiety and withdrawal, as well as depressive features. He has had extreme difficulties with attention and focus through his childhood and adult life.

Tr. 418.

Dr. Gilbreath noted that Shannon's GAF on admission was 35, and was 55 on discharge. Nothing in this chart note supports a finding that Shannon is not fully credible.

The ALJ found that Shannon's "activities of daily living are inconsistent with his complaints of disabling mental limitations and the evidence suggests he has been working, but with unreported income." Tr. 34.

Shannon testified that he is 46 years old and he receives food stamps. Tr. 11. He completed the seventh grade in special education classes, and went to fifth grade twice. Tr. 14. He completed a GED while in prison. Shannon said he couldn't concentrate or do well around other people. He has attended meetings and counseling at Cascadia off and on for five years. Shannon testified that he goes almost every day to dual recovery meetings, and he is there five days a week until about 2:00 p.m. each day. Tr. 12. He testified that if he does not take his medication he will black out for two days or not sleep for a couple of days. He doesn't remember what has happened, he gets headaches, and he hears voices. Tr. 14. Sometimes he forgets to take his medications, and one of the reasons he goes to Cascadia is because the people there remind him to take his medication. *Id.*

The ALJ found that Shannon engaged in substantial gainful activity in 2004. Tr. 29. Shannon does not challenge that finding. The ALJ noted that Shannon worked part time as a landscape laborer in 2005 and 2006, and concluded that that work was not substantial.

The ALJ noted that Shannon worked sporadically, part-time, through 2007. Tr. 34. His mental health counselor authorized him to work 20 to 25 hours per week in February 2007.

The Commissioner argues that work activity supports an ALJ's denial of benefits, citing *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). However, it is not logical, and the *Drouin* court did not find, that freely admitted work activity is a specific or cogent reason to find a claimant not credible.

6 - OPINION AND ORDER

The ALJ argues that Shannon's responsiveness to treatment undermines the credibility of his allegations. Tr. 34. The ALJ points to a January 2007 chart note reflecting that Shannon was doing better, compliant with his medications, and looking for work. Tr. 34, 652. The ALJ also cites an April 2007 note that Shannon had been working part-time in landscaping for the past 8-12 weeks and was "doing great," with "0 problems." Tr. 35, 643. However, these reports must be balanced against the July 2007 reports of problems sleeping with decreased Seroquel, tendinitis in the right foot, and weight gain, while working mowing lawns 10-15 hours per week. Tr. 584. In August 2007, Shannon is diagnosed with Psychotic Disorder, Alcohol Dependence early full remission, cocaine, amphetamine, opioid, cannabis, and inhalant abuse, rule out anti-social personality disorder, and assessed a GAF of 51 and past year GAF of 45. Tr. 638.

The ALJ found that Shannon's allegations are not supported by the objective medical evidence. Tr. 33. The ALJ properly noted that Dr. Starbird did not assess disabling functional limitations, but dismissed the contradictory reports from Daniel Wardin, QMHP, Shannon's treating counselor. Tr. 35. As set out below, the ALJ erred by failing to properly credit the reports of Mr. Wardin and other mental health professionals.

Finally, the ALJ stated that Shannon "demonstrated an ability to participate in [the] hearing closely and fully without being distracted and he was able to respond to questions in an appropriate manner." Tr. 33. This is appropriate evidence for the ALJ to consider. However, considering all of the evidence, the ALJ failed to identify clear and convincing reasons to find Shannon less than fully credible.

///

///

7 - OPINION AND ORDER

## II. Other Mental Health Evidence

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2008). Friends and family members who observe the claimant's symptoms and daily activities are competent to testify about the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Daniel J. Wardin, QMHP, has worked with Shannon at Cascadia since October 2006. In November 2008, Mr. Wardin noted that as of September, 2006, Shannon was diagnosed with Psychotic Disorder, NOS, and appeared to meet some criteria for Schizophrenia and Depression. His current diagnosis was Psychotic Disorder NOS and Schizophrena, paranoid type. Tr. 424. Mr. Wardin stated that Shannon had consistently presented the diagnosed mental health symptoms.

In September, 2009, Mr. Wardin completed a mental impairment questionnaire. Tr. 433-40. Mr. Wardin stated that Shannon has trouble keeping appointments and managing a schedule. He would need to work at a reduced pace and his ability to work an eight hour day or 40 hour week is poor. He believed that Shannon would be absent more than four days a month as a result of his impairments. Mr. Wardin opined that Shannon is extremely limited in the ability to remember work like procedures, and to understand and remember simple instructions. He found that Shannon was extremely limited in the ability to maintain attention for more than a two hour period, to maintain regular attendance and be punctual, and to sustain an ordinary work routine without special supervision. Tr. 438. Mr. Wardin stated that Shannon was extremely limited in

the ability to complete a normal workday and work week without interruption from psychologically based symptoms, extremely limited in performing at a consistent pace, and extremely limited in concentration, persistence, and pace.

In January 2010, Mr. Wardin completed a functionality report. He stated that he saw Shannon four times a week for the past four to five years, and that he believes Shannon has marked limitations in activities of daily living, moderate difficulties in social functioning, and marked difficulties in concentration, persistence and pace, with long and short term memory deficits. Tr. 523-30. Mr. Wardin thought Shannon had marked episodes of decompensation.

The ALJ dismissed Mr. Wardin's opinions as inconsistent with Shannon's activities of daily living and work activities. Tr. 35. The ALJ stated that Mr. Wardin's opinions are not fully consistent with group therapy notes which indicate the claimant reported a good mood and no psychotic symptoms. Tr. 35, 382, 404. However, being in a good mood without psychotic symptoms is not inconsistent with Mr. Wardin's observations.

The ALJ's finding is inconsistent with the record read as a whole. The ALJ erred by failing to identify a germane reason for rejecting this lay testimony.

### III. Residual Functional Capacity Analysis

The ALJ posed the following hypothetical question to the VE- a 46 year old man with a GED, with no exertional limits, limited to simple and repetitive tasks and only occasional interaction with others. Tr. 17. The VE testified that such an individual could perform Shannon's past work as a janitor, hotel maintenance worker, or landscape laborer. However, the VE also testified that if that hypothetical person missed work two or more times per month, they would not be able to sustain competitive employment. *Id.*

9 - OPINION AND ORDER

## IV. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000); *Benecke v. Barnhart*, No. 03-15155, 2004 WL 1770096 (9th Cir. Aug. 9, 2004). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*

The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at 1178 n.2.

The ALJ improperly rejected the testimony of Shannon and Mr. Wardin as to Shannon's mental limitations. The VE testified that a person with the described limitations would be unable to sustain employment. Tr. 17. If credited, the testimony, coupled with the testimony of the VE,

establishes that Shannon cannot work on a regular and sustained full-time basis and, therefore, he is disabled. The court, therefore, concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r*, 223 F.3d 968 (9th Cir. 2000). *See also Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.")

Accordingly, the court remands this matter for the purpose of permitting the Commissioner to calculate and to award benefits.

## CONCLUSION

For these reasons, the ALJ's decision that Shannon is not disabled is not supported by substantial evidence. The decision of the Commissioner is reversed and this case is dismissed.

IT IS SO ORDERED.

Dated this 15 day of November, 2012.

JAMES A. REDDEN
United States District Judge